IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IKECH EMEAGHARA,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 2:18-CV-00625
CRIM. NO. 2:16-CR-224
JUDGE JAMES L. GRAHAM
Chief Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255*. (ECF No. 62.) This matter is before the Court on Petitioner's Motion, Respondent's *Response in Opposition* (ECF No. 66), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 62) be **DENIED** and this action be **DISMISSED.**

**Facts and Procedural History**

On March 7, 2017, Petitioner pleaded guilty pursuant to the terms of his *Plea Agreement* to Counts 1 through 8 of the *Superseding Indictment*, which charged him with eight counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and (e). (ECF Nos. 34, 37.) On June 23, 2017, the Court imposed an aggregate term of 240 months imprisonment, to be followed by five years supervised release. (ECF No. 53.) Petitioner did not file an appeal.

On June 27, 2018, he filed this *Motion to Vacate under 28 U.S.C. § 2255*. (ECF No. 62.) Petitioner asserts that his sentence was unconstitutionally enhanced for brandishing a firearm during a crime of violence, because robbery does not involve a crime of violence (claim one); and that he was denied effective assistance of counsel, because one of his defense attorneys, *i.e.,*

Attorney Bryon Potts, did not attend Petitioner's first proffer session, leaving Petitioner with defense counsel Kia Wrice, who according to Petitioner was unprepared.[1] Petitioner contends that his recommended sentence under the advisory United States Sentencing Guidelines and terms of the government's plea offer increased as a result, from a base offense level of 16 to a base offense level of 20. It is the position of the Respondent that these claims are without merit.

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780, 783 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, No. 94-5917, 1995 WL 465802 (6th Cir. 1995)). Further, non-constitutional claims not raised at trial or on direct appeal are waived on

---

[1] Petitioner retained attorneys Wrice and Potts as his defense counsel; however, on January 19, 2017, the Court granted Potts' *Motion to Withdraw* (ECF No. 32), and on January 25, 2017, Attorney Christoper Cooper filed a *Notice of Appearance* as co-counsel. (ECF No. 33.)

collateral review except where the errors amount to something akin to a denial of due process. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion under § 2255 unless the petitioner shows (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously or (2) that he is "actually innocent" of the crime. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

> A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. at 736 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017).

**Claim One**

Petitioner first claims that his sentence was improperly enhanced for the use of a firearm, because armed robbery does not involve a crime of violence. Petitioner waived this claim by failing to raise it on direct appeal. *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013) ("Generally, when a defendant fails to raise an issue at sentencing or on direct appeal, that issue is waived" unless he can establish cause and prejudice to excuse his procedural default) (citing *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000)). Further, Petitioner has failed to establish cause and prejudice for this procedural default.

His sentence was enhanced five points under U.S.S.G. § 2B3.1(b)(2)(C) on Counts 1, 2, 6, 8, *see PreSentence Investigation Report*, ¶¶68, 77, 115, 135, and six points under U.S.S.G. § 2B3.1(b)(2)(B) on Counts 3, 4, 5, 7, *see PreSentence Investigation Report*, ¶¶ 86, 95, 105, 125, for brandishing or otherwise using a firearm during the crime of bank robbery. Although it is not clear

how Petitioner's argument (that bank robbery is not a crime of violence) applies to the enhancement of his recommended Guideline sentence under the provision of U.S.S.G. § 2B3.1(b)(2), it nonetheless fails. Convictions for armed bank robbery under 18 U.S.C. § 2113(a), whether committed through force or through intimidation, constitute crimes of violence. *See Hill v. United States*, 308 F. Supp. 3d 939, 942 (S.D. Ohio April 17, 2018) (citing *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (concluding "[a] taking by intimidation under § 2113(a) . . . involves the threat to use physical force" under the guidelines); *United States v. Ellison*, 866 F.3d 32, 39–40 (1st Cir. 2017) (ruling that bank robbery through intimidation under § 2113(a) constitutes a crime of violence under the elements clause because "proving 'intimidation' under § 2113(a) requires proving that a threat of bodily harm was made § 2113(a)"); *United States v. Wilson*, No. 16–3485, 2018 WL 444190, at *4 (3d Cir. Jan. 17, 2018) (finding that "unarmed bank robbery by intimidation" in violation of § 2113(a) is a crime of violence under § 4B1.2(a)(1), because intimidation involves the threatened use of physical force against another); *United States v. Brewer*, 848 F.3d 711, 716 (5th Cir. 2017) (finding that federal bank robbery is a crime of violence under elements clause); *United States v. Campbell*, 865 F.3d 853, 854 (7th Cir. 2017) (finding that federal bank robbery by intimidation in violation of § 2113(a) is a crime of violence for purposes of applying the pre–2016 federal Sentencing Guideline for career offenders); *United States v. Harper*, 869 F.3d 624, 626–27 (8th Cir. 2017) (holding "bank robbery by intimidation under § 2113(a) is a crime of violence under the force clause, because it involves a threatened use of force").

Moreover, Petitioner fails to demonstrate a viable objection to the enhancement of Petitioner's recommended Guideline sentence under the provision of U.S.S.G. § 2B3.1(b)(2)(B), (C) for brandishing or otherwise using a firearm during the offense of armed bank robbery.

U.S.S.G. § 2B3.1(b)(2)(B), (C) provide that if, during the course of a robbery, a firearm was "otherwise used, "increase by 6 levels"; "if a firearm was brandished or possessed, increase by 5 levels[.]" "'Brandished' means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present." U.S.S.G. § 1B1.1 cmt. n. 1(D). "'Otherwise used'. . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1 cmt. n.1(I). Additionally, an object shall be considered to be a dangerous weapon if it "closely resembles an instrument capable of inflicting death or serious bodily injury or [] the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury[.]" U.S.S.G. § 2B3.1 cmt. n. 2.

Defense counsel initially objected to the imposition of a six level increase in Petitioner's recommended Guideline sentence under U.S.S.G. § 2B3.1(b)(2)(B), arguing that Petitioner should be held accountable only for brandishing a firearm during the robberies, with a corresponding five level increase in his recommended Guideline sentence under U.S.S.G. § 2B3.1(b)(2)(C). Counsel later withdrew this objection, as it did not affect Petitioner's ultimate recommended Guideline sentence. *See Sentencing Transcript* (ECF No. 64, PAGEID # 267.) Further, Petitioner admitted guilt to committing eight armed robberies through force and violence and intimidation, intentionally putting the lives of customers and employees in jeopardy by the use of a dangerous weapon or device. *Guilty Plea Transcript* (ECF No. 49, PAGEID # 192.) The prosecutor summarized the facts:

> [O]n October 31, 2013, at approximately 2:04 p.m., Ikechi Emeaghara entered the WesBanco Bank, located at 116 South Styger Road, Gahanna, Ohio. Mr.

5

emeaghara approached the tellers, pulled a handgun from his sweatshirt pocket, and demanded money. The tellers complied, and Emeaghara exited the bank with $5,055. The deposits of the said WesBanco Bank were insured by the Federal Deposit Insurance Corporation.

\*\*\*

On November 30, 2013, at approximately 8:09 a.m., Ikechi Emeaghara entered the Cooper State Bank, located at 1669 West 5th Avenue, Columbus, Ohio, and approached the tellers. Emeaghara produced a handgun and ordered the tellers to empty the drawers. Emeaghara stated that he wanted hundreds and further demanded money from the vault. The tellers complied and retrieved 100 dollar bills from the vault. And Emeaghara then exited the bank with $14,615.

\*\*\*

On December 6, 2013, at approximately ten o'clock a.m., Ikechi Emeaghara entered the WesBanco Bank, located at 116 South Stygler Road, Gahanna, Ohio. Emeaghara produced a handgun, cocked it back, and told the tellers that he wanted all the money in their drawers. Emeaghara then demanded money from the vault. The tellers complied, and Emeaghara exited the bank with $8,710.

\*\*\*

On July 9, 2014, at approximately 9:04 a.m., Ikechi Emeaghara entered the Smart Federal Credit Union, located at 3454 North High Street, Columbus, Ohio. Emeaghara was brandishing a handgun and carrying a black bag. Emeaghara told the teller, "You have 30 seconds to open the safe; 30 seconds. Go!"

The teller gained entry to the vault . . . during the entire time that the teller was attempting to gain entry, Emeaghara held the victim at gunpoint and walked her around the vault for several minutes while threatening the victim. A second teller entered the bank while the robbery was in progress, and Emeaghara instructed that teller at gunpoint to sit and not move. Emeaghara fled the bank with $45,192 after gaining entry to the vault.

\*\*\*

On January 12, 2015, at approximately 7:24 a.m., Ikechi Emeaghara entered the Cooper State Bank, located at 5811 Sawmill Road, Columbus, Ohio. He brandished a gun, approached the tellers, and told them, "You have 30 seconds to open the vault!"

The suspect began counting backwards from 30, and he led the two tellers by gunpoint to the vault. The tellers were unable to open the vault due to a malfunction, and Emeaghara then cocked the handgun and stated they were pissing

him off and that he wanted cash. The tellers provided a night deposit bag, and Emeaghara fled the bank with $327.

\*\*\*

On April 26, 2015, at approximately 2:55 p.m., Ikechi Emeaghara entered the Cooper State Bank, located at 5811 Sawmill Road, Columbus, Ohio, while brandishing a gun and carrying a black bag. Emeaghara took two of the employees, by gunpoint, to the vault and informed them that nobody would get hurt if they gave him what he wanted. The tellers gained entry into the vault and placed the money in the black bag. Emeaghara then fled the bank with $57,500.

\*\*\*

On March 17, 2016, at approximately 11:07 a.m., Ikechi Emeaghara entered the First Merit Bank, located at 1156 East Powell Road, Lewis Center, Ohio. Emeaghara brandished a gun and demanded that the three bank employees that were seated move to behind the teller counter. Emeaghara then demanded access to the vault. One of the employees informed Emeaghara that the vault was on the other side of the bank, to which Emeaghara replied, "I don't care. Open it. You have 30 seconds before I start shooting!"

After Emeaghara obtained some cash from the teller drawers, he then led the employees, by gunpoint, to the vault area. Once access to the vault was achieved, Emeaghara removed $76,000 and fled the bank. While Emeaghara was fleeing, he dropped the mask that had been covering his face, along with $6,000, in an apartment complex across the street from the bank. The mask was collected, and DNA was extracted.

\*\*\*

On October 21, 2016, at approximately 10 a.m., Ikechi Emeaghara entered the Key Bank, located at 5775 Frantz Road, Dublin, Ohio. Emeaghara brandished a gun and demanded cash from the teller drawers. Emeaghara then directed bank employees by gunpoint to open the vault. Once the vault was open, Emeaghara removed cash and fled with $53,012. . . . Emeaghara had been given a GPS tracking device along with the cash that provided real-time location tracking to the Columbus division of Police. After several minutes, Columbus police officers were able to locate Emeaghara, and he fled in his 2007 Chevy Tahoe. Emeaghara drove over several curbs that flattened his tires, and came to a stop in a parking lot. . . . Emeaghara then exited the vehicle with the handgun pointed at the officers, who shot Emeaghara several times. Emeaghara was arrested and transported to Grant Hospital for treatment.

\*\*\*

> During a proffer with law enforcement officials, in the presence of his attorney, Emeaghara admitted to his sole involvement in 18 further bank robberies – further robberies, 15 that involved banks and three involving the same retail store, all in the greater Columbus metropolitan area.

(ECF No. 49, PAGEID # 193-200.) Petitioner admitted to committing each of these eight bank robberies with a BB pistol or some other kind of item that looked like a weapon or actually was a weapon. (PAGEID # 201.) He admitted to using that weapon, and verbal commands, to direct people to move from one place to another. He admitted his guilt to the offenses charged. (PAGEID # 201-02.) In view of these facts, the Court properly increased Petitioner's recommended Guideline sentence under 2B3.1(b)(2) for his use of a firearm during commission of bank robbery. *See, e.g., United States v. Bolden,* 479 F.3d 455, 463 (6th Cir. 2007) ("Pointing a gun while telling someone what to do obviously goes beyond" mere brandishing and amounts to "otherwise used."); *United States v. Rodriguez,* 301 F.3d 666, 668 (6th Cir. 2002) (noting that object does not need to be an actual firearm so long as "a reasonable individual would believe that the object is a dangerous weapon under the circumstances.") (citation omitted).

Thus, claim one does not provide Petitioner the relief he seeks.

**Claim Two**

In claim two, Petitioner asserts that he was denied the effective assistance of counsel.

**Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that

counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Therefore, a petitioner must also establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 692.

In order to establish prejudice, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

A petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). *Strickland's* two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders,* 852 F.2d 883, 884 (6th Cir. 1988). In order to obtain relief on that basis, however, a

petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

Petitioner has failed to meet this standard here. Nothing in the record supports his claim that the government changed the terms of Petitioner's plea offer based on Attorney Potts' failure to appear at the first proffer session, or that Petitioner was otherwise prejudiced on this basis. Petitioner's allegations are entirely without support. Petitioner had a base offense level of 20 because the charges involved robbery, under the provision of U.S.S.G. § 2B3.1(a). *See PreSentence Investigation Report*, ¶ 65. Moreover, Petitioner bears the burden of overcoming the presumption of effective assistance and demonstrating a constitutional violation in these proceedings. *See Dossie v. United States*, Nos. 5:07-cv-1696, 5:04-cr-110, 2008 WL 45378, at *3 (N.D. Ohio Jan. 2, 2008) (citing *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *see also United States v. Castro-Ramirez,* 2014 WL 5332859, at *5 (E.D. Mich. Oct. 20, 2014) ("Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof[.]") (citing *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)). He has failed to meet this burden here. To the contrary, evidence of Petitioner's guilt appears to have been substantial. The record the record does not reflect that the government would have been unable to prove the charges against him. By entry of his guilty plea, Petitioner substantially reduced his potential prison exposure.

Claim two is without merit.

**Recommended Disposition**

For the foregoing reasons, the Undersigned **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 62) be **DENIED** and this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge